MARY A. SHATTUCK *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

JULY 13, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of trespass on the case for negligence. At a trial in the superior court the jury returned a verdict for the plaintiff for $2000. The trial justice denied the defendant's motion for a new trial and it

thereupon duly prosecuted its bill of exceptions to this court. The case is now before us on three of defendant's exceptions only, all of them relating to the refusal of the trial justice to grant it a new trial, and being actually three grounds of one exception. All of its other exceptions are expressly waived.

The defendant contends that the above decision of the trial justice was erroneous because the verdict was contrary to the evidence and the weight thereof and because the amount of damages awarded by the jury was excessive. It appears from the evidence that on March 14, 1943 about 3:45 p.m. the plaintiff was a passenger on a trackless trolley bus, hereinafter referred to as the bus, owned and operated by the defendant. This bus was proceeding upgrade on Broadway in the city of Pawtucket in a direction away from the center of the city. When the bus, which was operated by one man, was part way up the hill the trolley pole came off the wire and the bus came to a stop. The operator, who desired to get out so as to replace the pole, attempted to keep the bus stationary by putting on the emergency brake but this did not hold, the bus tending to roll backward on the incline. The operator then asked a male passenger to sit in the driver's seat and hold his foot on the brake pedal while the former went outside for the above-mentioned purpose. The passenger did this and the operator, when he returned from outside, held his foot on the brake pedal while the passenger got up from the seat behind the steering wheel and the operator then sat down therein and started the bus again.

The evidence is conflicting as to what happened then. According to the plaintiff, who was sitting alone next to the aisle in the second seat from the front of the bus on its right side facing forward, the bus first rolled back down the hill several feet and then started forward with a sudden violent lurch, which threw the passenger, who had just left the operator's seat and who was a tall, heavy man, against the plaintiff's left side in such a manner as to carry her left arm

backward with him, causing her to faint. The bus was thereupon stopped and the plaintiff was assisted to a doctor's office nearby.

The operator testified that at the time of the accident the bus started easily without any jerk in the regular and ordinary way; that its starting mechanism is so arranged that it starts slowly even if the power pedal is pushed down to the floor, being self-generating; that he was not aware that the plaintiff had been injured until someone told him; and that he then made arrangements to have her taken to a doctor. Two women passengers testified, in substance, that when the passenger who had held his foot on the brake pedal for the operator got up from the driver's seat and started to return to his own he lost his balance or missed his footing in some manner, as the bus moved, and fell against the plaintiff; that the bus started in the ordinary manner; that they did not notice or feel anything unusual in that connection and that no one was thrown out of his seat. The passenger who fell against the plaintiff did not testify. It appears in evidence, however, that the defendant had taken his name at the time of the accident, but that the plaintiff did not know who he was.

The question of the defendant's liability depends on whether or not the bus was started unusually suddenly or violently so as to lead to the conclusion that the operator was guilty of negligence. If the bus was started in the ordinary and usual manner, no negligence would be shown. Each case of this type has to be decided on the evidence adduced. *Roy* v. *United Electric Rys. Co.*, 53 R. I. 122. In regard to this question the trial justice, in denying the defendant's motion for a new trial, held that the issue of how the bus was started was, on the conflicting evidence, for the jury to decide in the first instance, and that he was unable to say that their finding in favor of the plaintiff on that issue was against the weight of the evidence. We have considered the evidence and have concluded that his above holding is not clearly wrong. The defendant, therefore,

takes nothing by its exceptions relating to the issue of the defendant's liability and they are overruled.

A more difficult question is raised by its exception to the amount of the damages awarded. The trial justice gave this matter consideration and in his rescript stated that while the damages given were adequate he could not say that they were excessive. That holding, made in the exercise of his independent judgment, is, of course, of great persuasive force. We are of the opinion, however, that in passing upon the amount of the verdict he did not, among other things, give sufficient weight to one of his own findings which he stated as follows in his rescript: "Upon all the evidence, it seems probable that any injury received by the plaintiff on March 14, 1943 was not the sole cause of her present condition." Upon careful consideration we are of the opinion that the damages awarded by the jury were, in view of all the facts and circumstances, grossly excessive.

The plaintiff, who at the time of the accident, was sixty years old and was employed in housework, testified that she then weighed about one hundred twenty-two pounds but at the time of the trial weighed only about eighty-nine pounds; that her arm and shoulder still pained her and that she was unable to work. She made no claim, however, for loss of wages. After the accident she went to live with her daughter. According to the plaintiff's evidence, for about ten weeks thereafter she could not dress or feed herself and had to have attention day and night, including massage and the application of hot, wet bandages. These services were performed by her daughter, who, by reason thereof, could no longer act as a spare telephone operator, for which work she had been receiving $22 per week. For the next eleven weeks the plaintiff improved but still required some attention. For all of these services the plaintiff's daughter expects to be paid $25 a week for the first ten weeks and $15 per week for the following eleven weeks, a total of $415. The trial justice considered this charge unduly large, since the plaintiff was at all times able to go and did go to her

doctor's office for treatment; but he did not order the verdict reduced.

The two doctors who testified were produced as witnesses by the plaintiff. The evidence showed that her left elbow, arm and shoulder were injured, causing her also some pain and discomfort in that side of her neck. No bones were broken. The doctor who treated her from the date of the accident to May 1943, when he left Pawtucket, testified, in substance, that her left arm and shoulder were bruised and swollen with some small abrasions around the elbow and some reddening on the left shoulder, and that she complained of considerable pain. When he left she was not cured, but he made an entry in his records under the date of March 26, 1943 that she was "considerably improved." He saw her nine or ten times, always at his office. His bill is $30 or $35.

The other doctor, whose bill for services is $50, treated her from May 3, 1943 up to the time of trial, his last examination being November 22, 1943. He testified that he found some limitation of motion in the plaintiff's left arm and shoulder and pain and tenderness over the entire shoulder girdle; that she was not entirely cured at the time of the trial; that any prognosis respecting these injuries must be guarded and that he could not say when she could resume work. He declined to give any definite opinion as to what caused her loss of weight. It also appeared from his testimony that he recommended that the plaintiff receive treatments of physiotherapy with massage and baking in an attempt to give her relief. Such treatments would cost $3 or $4 each. It was also his judgment that the plaintiff would require some further medical attention.

Certain other important facts appeared in evidence, however, from the cross-examination and the redirect examination of this doctor. It was disclosed that in May 1942 the plaintiff consulted the witness regarding a pain in the right side of her chest which caused her to cough when she took a deep breath. The witness testified as follows regarding

this situation: "We had a urine examination and a diagnosis of question of arthritis of the spine." He stated, however, that this diagnosis was not definite. He also testified that the plaintiff was high-strung, and that she had complained of abdominal distress which might be due to the "emotional side of the picture that would follow an injury of this sort." He further gave evidence that in March 1937 he treated her for a broken left collarbone following a fall, and that a fractured collarbone could set up an arthritic condition at the present time. The plaintiff testified that she is now receiving treatments for arthritis in "My shoulder and back and both shoulder blades, and the back of my neck is very, very bad."

In view of the above evidence we are of the opinion that it is open to serious question as to just how much of the plaintiff's present condition is due entirely and alone to the accident involved in this case. The trial justice apparently recognized this situation, but did nothing to make the damages respond more nearly to the injuries which the plaintiff had suffered solely from the negligence of the defendant. His failure in this respect was error.

We have considered all the facts and circumstances appearing in evidence and have come to the following conclusion on this point. The full amount claimed by the plaintiff's daughter for nursing and the bills of the doctors to date amount in all to $500. In passing on the difficult question of the proper and reasonable allowance for the plaintiff's pain and suffering, caused by the accident, it is our judgment that the further sum of $500 would be substantially just to both parties. It is also our opinion that an additional sum of $300 should be adequate for such further medical advice and for such recommended physiotherapy treatments as far as the evidence shows it may be necessary solely by reason of the injuries to the plaintiff caused by the defendant. The total amount of these items is $1300.

The defendant's tenth exception is sustained on the ground that the damages awarded by the jury are grossly excessive. All of the defendant's other exceptions are overruled.

The case is remitted to the superior court for a new trial on all issues, unless the plaintiff, on or before July 24, 1944, shall file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $1300. If the plaintiff shall file such a remittitur, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

*Fergus J. McOsker*, for plaintiff.

*Earl A. Sweeney, Frank J. McGee*, for defendant.